UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for FIRST CHICAGO BANK & TRUST, an Illinois chartered bank, | ) ) ) ) ) | No. 11 CV 5902 |
| Plaintiff, | ) ) | |
| v. | ) ) | Magistrate Judge Young B. Kim |
| LOWIS & GELLEN LLP, an Illinois limited liability partnership, and ROBERT D. LEAVITT, | ) ) ) ) ) | |
| Defendants/ Third-Party Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| KATTEN MUCHIN ROSENMAN LLP, an Illinois limited liability partnership, WILLIAM J. DORSEY and JOHN J. SIEGER, | ) ) ) ) ) | |
| Third-Party Defendants. | ) ) ) | February 20, 2014 |

**MEMORANDUM OPINION and ORDER**

In this legal malpractice and breach of contract action, the Federal Deposit Insurance Corporation ("FDIC") as receiver for First Chicago Bank & Trust ("First Chicago") seeks to recover damages it incurred from a loan transaction gone wrong. FDIC alleges that First Chicago's former counsel, Lowis & Gellen LLP and Robert D. Leavitt (together, "L&G"), provided faulty advice and documentation in connection with a loan from First Chicago to IFC Credit Corporation ("IFC"). L&G is in turn suing Katten Muchin Rosenman LLP, William J. Dorsey and John J.

Sieger (collectively, "Katten") in a third-party action claiming that Katten, as counsel hired by First Chicago to replace L&G, committed intervening and superseding negligence which ultimately caused or contributed to FDIC's damages. Before the court is L&G's Motion for Reconsideration in Part of this court's December 19, 2013 order denying L&G's October 28, 2013 motion to compel. The motion is denied for the following reasons:

## Background

### A. First Chicago's Complaint

First Chicago originally filed suit against L&G on May 10, 2011, in the Circuit Court of Cook County, Illinois. (R. 1-1.) After First Chicago filed for bankruptcy and FDIC was appointed as receiver, FDIC substituted itself as Plaintiff on August 25, 2011, and removed the case to this court. (R. 12 ¶¶ 3-5.) According to FDIC's amended complaint, in December 2007, First Chicago agreed to loan IFC up to $5 million (later increased to $10 million) to purchase or finance equipment that would be leased to third-parties. (R. 68, Am. Compl. ¶¶ 13, 23.) FDIC alleges that First Chicago hired L&G to prepare the necessary documents granting First Chicago a perfected first priority security interest in the loan collateral, but that L&G failed to deliver the secured interest it sought. (Id. ¶ 16, 20.) FDIC further alleges that in correspondence exchanged between L&G and First Chicago after the transaction closed, L&G failed to correct First Chicago's misperception that a UCC filing was not necessary to perfect its security interest in the loan collateral. (Id. ¶¶ 33-34.) First Chicago later hired Katten to replace L&G

in 2009, and upon discovering that UCC financing statements had not been filed against IFC, Katten made the filing on First Chicago's behalf. (Id. ¶¶ 61-62.) After IFC defaulted on the loan in June 2009 and refused to turn over the loan collateral, First Chicago filed a complaint and an emergency motion for the appointment of a receiver and temporary restraining order against IFC on July 7, 2009 (the "TRO Action"). (Id. ¶¶ 63, 65.) IFC filed for bankruptcy a few weeks later on July 27, 2009, and the trustee of IFC's bankruptcy estate initiated an adversary proceeding against First Chicago seeking to: (1) avoid First Chicago's security interest and lien on the loan collateral; (2) avoid and recover certain payments made to First Chicago under the loan; and (3) bar First Chicago's claims against IFC. (Id. ¶¶ 68, 72.) First Chicago ultimately settled with the trustee on December 1, 2010, and agreed to return $200,000 and to assign all of its interest in the loan collateral to the trustee. (Id. ¶¶ 73-74.) FDIC now seeks damages to recoup the losses First Chicago sustained from the failed loan transaction, along with legal fees and costs incurred in the proceedings surrounding IFC's bankruptcy and in bringing this action. (Id. ¶¶ 84, 91.)

**B.    L&G's Third Party Complaint**

L&G answered the complaint[1] on January 9, 2012, denying all allegations of wrongdoing and raising several affirmative defenses including First Chicago's contributory negligence and Katten's intervening and superseding negligence as successor counsel. (R. 16.) L&G also filed a third party complaint for contribution

---

[1] FDIC filed an amended complaint on July 31, 2013, (R. 68), and L&G answered the same on August 30, 2013, (R. 69).

3

against Katten on January 23, 2012. (R. 19.) L&G alleges that Katten's failure to file the UCC financing statements perfecting First Chicago's security interest sooner and premature initiation of the TRO Action were intervening and superseding negligent acts or omissions barring FDIC's claims. (Id. ¶ 22.) L&G contends that the TRO Action caused IFC to file for bankruptcy within 90 days of Katten perfecting First Chicago's security interest, thereby allowing the bankruptcy trustee to avoid First Chicago's security interest. (Id. ¶ 21-22, 29.) Katten unsuccessfully sought dismissal of L&G's third party complaint, (R. 51), and filed its answer on March 15, 2013, denying all allegations of negligence, (R. 54).

### C. L&G's Motion to Compel and Motion for Reconsideration

On October 28, 2013, L&G brought a motion to compel seeking, among other things, First Chicago's privileged communications with Katten regarding transactions with IFC. (*See* R. 74 at 11-14.) L&G argued that "at-issue" waiver applied to otherwise privileged documents because without them, L&G cannot effectively defend against FDIC's claims and prosecute its third-party action against Katten. (Id. at 12.) FDIC opposed L&G's motion, contending that at-issue waiver does not apply in this case and that the privileged communications L&G seeks are not vital to its defense. (R. 84 at 13-14.) FDIC also argued that unlike other malpractice cases in which at-issue waiver was found, this case does not concern multiple firms involved in the same underlying litigation. (Id. at 14-15.) According to FDIC, L&G's malpractice in failing to properly secure the loan transaction was complete before First Chicago filed the TRO Action against IFC. (Id. at 15.)

4

On December 19, 2013, this court granted L&G's motion in part, but denied the motion as to certain discovery requests because, among other reasons, the court was not convinced that First Chicago had waived its attorney-client privilege by putting its communications with Katten at issue. (R. 87.) Pursuant to a briefing schedule set by this court, (id.), L&G filed the current motion on January 23, 2014, seeking reconsideration of this court's December 19, 2013 order, (R. 91, L&G's Mot. ¶ 2). Specifically, L&G's motion focuses on Interrogatory Nos. 19 and 24 and Document Request Nos. 1, 7, 9, 10, 11, 16, and 17, directed to FDIC, and Interrogatory Nos. 2, 5, and 6, and Document Request Nos. 1, 2, 3, and 4, directed to Katten. (Id. ¶ 1.) L&G argues that: (1) this court misapplied the law by conflating "at-issue" waiver with "subject matter" waiver; and (2) at-issue waiver occurred when FDIC injected an issue into the case which requires the examination of privileged communications to resolve. (R. 93, L&G's Mem. at 2-3.) In support of the second argument, L&G asserts that Katten's actions could have proximately caused FDIC's damages, and are therefore at issue. (Id. at 3-4.) Alternatively, L&G contends that FDIC at least waived privilege with respect to Katten's redacted invoices, which were submitted to L&G in support of FDIC's claimed damages. (Id. at 1, 12-15.) FDIC filed its response on February 7, 2014, which was adopted and joined by Katten, (R. 97), refuting L&G's argument that this court improperly conflated at-issue and subject matter waivers and arguing that L&G's reliance on federal decisions is inappropriate in this case not only because state law governs, but also because those decisions are distinguishable, (R. 98, FDIC's Resp. at 2-8).

Relying primarily on the Illinois Supreme Court's decision in *Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc.*, 189 Ill. 2d 579 (Ill. 2000), FDIC argues that the information L&G seeks should remain privileged. (R. 98, FDIC's Resp. at 5-8.) Finally, FDIC denies L&G's contention that by producing Katten's redacted invoices, FDIC waived its privilege as to those invoices. (Id. at 8-10.)

## Analysis

A motion for reconsideration is narrowly designed "to correct manifest errors of law or fact or to present newly discovered evidence." *Hicks v. Midwest Transit, Inc.*, 531 F.3d 467, 474 (7th Cir. 2008). A motion for reconsideration will be granted when: (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in the law since the submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 2009) (citation omitted). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (citations omitted). Therefore, a court will grant a motion to reconsider when there is a "compelling reason," including a change in the law that shows that an

earlier ruling was erroneous, but not to address arguments that a party should have previously raised. *Solis v. Current Dev. Corp.*, 557 F.3d 772, 780 (7th Cir. 2009).

A.   At-Issue Waiver

L&G has failed to identify legitimate grounds for this court to reconsider its December 19, 2013 order. In its motion, L&G first argues that this court misapplied the law by referring to the "sword and the shield" analogy to describe the reasoning behind at-issue waiver. (R. 93, L&G's Mem. at 2.) Citing to *Lama v. Preskill*, 353 Ill. App. 3d 300, 301-02 (App. Ct. 2004), and *Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107 (Ill. 2012), L&G contends that the analogy only applies to subject matter waiver, and that using the metaphor to describe at-issue waiver improperly conflates the two. (R. 93, L&G's Mem. at 2.) This argument falls flat. L&G makes much of the fact that *Center Partners*, a case involving subject matter waiver, references "the 'sword' and the 'shield' approach" to explain that a party should not be allowed to disclose portions of privileged communications to gain an advantage while also claiming privilege over undisclosed communications relating to the same subject matter. *Center Partners*, 2012 IL 113107 at P39. But the court in *Lyon Financial Services, Inc. v. Vogler Law Firm, P.C.*, 2011 WL 3880948, at *3 (S.D. Ill. Sept. 2, 2011) used the very same analogy to describe at-issue waiver in words L&G found compelling enough to quote in support of its earlier motion to compel, (R. 74 at 12). Although at-issue waiver and subject matter waiver are distinct exceptions to privilege, the sword and shield metaphor is

7

applicable to both.  L&G's attempt to portray this "conflation" as an error of law is misguided.

L&G then resorts to rehashing arguments already considered and rejected by this court, including that because Katten's actions could have proximately caused FDIC's damages, at-issue waiver applies to First Chicago's privileged communications with Katten.  Although this court addressed these arguments during the December 19, 2013 hearing, it is worthwhile to address the substance of L&G's arguments in more depth here.

Illinois law governs the determination of attorney-client privilege waiver in this case.  *See* Fed. R. Evid. 501 ("In a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). Unlike attorney-client privilege, federal law governs the work-product doctrine.  *See Lyon*, 2011 WL 3880948 at *4.  The work-product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3), which explains that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  Both the attorney-client and work-product privileges are subject to waiver. *Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 212, 215 (N.D. Ill. 2001).  Courts generally apply the same at-issue test used in attorney-client privilege scenarios to determine whether to waive the work-product protection.  *See Lyon*, 2011 WL 3880948 at *4.

In applying Illinois law, this court must decide what the Illinois Supreme Court would do if it were presented with the issue. *Allen v. Transamerica Insurance Co.*, 128 F.3d 462, 466 (7th Cir. 1997). This court is not bound by district court decisions. *Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir. 1995). In the absence of authoritative Illinois Supreme Court rulings, decisions of Illinois Appellate Courts control unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently. *Id.* Illinois courts have stated that the attorney-client privilege serves to encourage full and frank communication between a client and an attorney by removing the fear of compelled disclosure of information. *See, e.g., Consol. Coal Co. v. Bucyrus-Erie Co.,* 89 Ill. 2d 103, 117-18 (Ill. 1982). Moreover, Illinois law recognizes "'that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client.'" *Fischel & Kahn,* 189 Ill. 2d at 585 (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981)). At the same time, however, attorney-client privilege rather than the duty to disclose is considered the exception, and privilege is strictly confined within its narrowest limits. *See Waste Management, Inc. v. Int'l Surplus Lines Ins. Co.*, 144 Ill. 2d 178, 200-201 (Ill. 1991).

Illinois Supreme Court case *Fischel & Kahn* involved facts similar to the case at hand. A law firm, Fischel & Kahn, advised an art gallery that it could limit its liability to consignment artists in case of damage to the artists' work. *Fischel & Kahn,* 189 Ill. 2d at 581. A fire subsequently destroyed the art gallery's inventory, and several consignment artists sued the gallery for damages. *Id.* The gallery

retained another law firm, Pope & John, to represent it in that litigation. *Id.* Fischel & Kahn later sued the art gallery to recover unpaid legal fees related to the exposure analysis, and the gallery filed a counterclaim for malpractice, alleging that the firm provided erroneous advice regarding the gallery's exposure to liability. *Id.* at 582. When Fischel & Kahn requested Pope & John's files relating to the underlying litigation, the art gallery withheld certain documents on the basis of attorney-client privilege and the work-product doctrine. *Id.* at 582-83. Fischel & Kahn argued that the gallery waived its privilege by filing its counterclaim because facts surrounding the underlying litigation were "central" to determining whether and to what extent the gallery's loss resulted from Fischel & Kahn's alleged malpractice. *Id.* at 585.

In holding that the art gallery did not waive its privilege, the court reasoned that "[t]o allow Fischel & Kahn to invade the attorney-client privilege with respect to subsequently retained counsel in this case simply by filing the affirmative defenses it did would render the privilege illusory[.]" *Id.* at 586. The court stated that "the allegations raised in Fischel & Kahn's affirmative defenses were insufficient to put the cause of [the gallery's] damages at issue, resulting in waiver of the attorney-client privilege in this case." *Id.* at 586-87. In contrast to the facts in a case cited by Fischel & Kahn, *Pappas v. Holloway*, 114 Wash.2d 198, 205-06 (1990), the firm's malpractice was "already complete" by the time the gallery hired Pope & John, and there was no need to determine "who, among a number of different lawyers handling the same matter simultaneously, might have committed

10

the alleged malpractice." *Id.* at 589. Furthermore, the court in *Fischel & Kahn* pointed out that the requested files were not "vital" to Fischel & Kahn's defense. *Id.* Again distinguishing *Pappas*, the court reasoned that non-privileged evidence regarding the gallery's damages would be readily available to either party, making intrusion upon privilege unnecessary. *Id.*

In *Lama v. Preskill*, 353 Ill. App. 3d 300, 301-02 (App. Ct. 2004), a plaintiff sued her former physician for negligently performing a procedure which caused the plaintiff to require additional emergency surgery for stabilization. Anticipating that the two-year statute of limitations would be an issue, the plaintiff alleged in her complaint that she did not discover her injury until a few *months* after her surgery, making her claim timely. *Id.* at 304. But the defendant obtained an affidavit from a malpractice attorney, Terrence Carden, who stated that the plaintiff's husband met with him just four *days* after the surgery. *Id.* at 302. The defendant then subpoenaed Carden's files arguing that by invoking the discovery rule to toll the two-year limitations period, the plaintiff placed at issue as to when she discovered her injury. *Id.* at 303. Affirming the trial court's order compelling production of Carden's files, the court in *Lama* rejected the plaintiff's arguments that the defendant was the one who raised the discovery rule as an affirmative defense and that she did not rely on the privileged documents to prove her allegations. *Id.* at 303, 306. The *Lama* court reasoned that at-issue waiver occurs when "a party voluntarily injects either a factual or legal issue into the case, the truthful resolution of which requires an examination of the confidential

11

communications." *Lama*, 353 Ill. App. 3d at 305 (internal quotations omitted). Because her complaint alleged that she only learned of her injury months after the surgery, the plaintiff "voluntarily injected" the timeliness issue into the case and thus waived privilege regarding communications with Carden. *Id.* at 306.

In this case, L&G argues that if "Katten's actions are potentially a proximate cause of the damages sought, then [FDIC] has waived protections with respect to Katten because Katten's conduct is 'at issue' in this matter." (R. 93, L&G's Mem. at 4.) In support of this argument, L&G reiterates allegations in its third-party complaint regarding Katten's failure to wait 90 days after filing the UCC financing statements when it initiated the TRO Action. (Id. at 5.) L&G further alleges that Katten "quietly rewrote the terms of the credit agreement" on First Chicago's behalf in order to permit additional borrowing. (Id. at 5-6.) Relying on *Fischel & Kahn* and cases citing to *Lama*, L&G contends that because FDIC "put Katten's conduct at issue," FDIC waived its privilege and work product protections over Katten's work for First Chicago related to IFC. *Id.* at 8-12.

Although L&G seeks to differentiate itself from Fischel & Kahn, the similarities between their positions are considerable. Fischel & Kahn argued that "it would be impossible to determine whether and to what extent [the gallery's] loss resulted from" its malpractice without privileged documents relating to the underlying litigation. *Fischel & Kahn*, 189 Ill. 2d at 585. L&G argues that it would be unfair "to prevent inquiry into the very cause of the damages" for which FDIC seeks recovery. (R. 93, L&G's Mem. at 11-12.) For the same reasons the Illinois

12

Supreme Court disagreed with Fischel & Kahn's arguments, this court disagrees with L&G. To allow the invasion of privilege simply because a party filed affirmative defenses "would render the privilege illusory[.]" *Fischel & Kahn,* 189 Ill.2d at 586. Also, the mere fact that an issue may be "subject to dispute" does not mean that the parties have waived privilege with respect to any attorney-client communications "that might touch on that question." *See id.* at 587. Such a lax construction of waiver undermines the important policy considerations behind "full and frank communication" between a client and an attorney. *See, e.g., Consol. Coal Co. v. Bucyrus-Erie Co.,* 89 Ill.2d 103, 117-18 (Ill. 1982).

L&G also relies on the court's statement in *Fischel & Kahn* that "the allegations raised in Fischel & Kahn's affirmative defenses were insufficient to put the cause of [the art gallery's] damages at issue[.]" *Fischel & Kahn,* 189 Ill.2d at 586-87. While this language does suggest that allegations could theoretically be sufficient to put causation at issue thereby triggering at-issue waiver, the information sought must also be vital to L&G's defense. *Id.* at 589. Even if Katten's conduct could have contributed to FDIC's damages—a theory L&G is free to explore—L&G has failed to explain how Katten's privileged communications with First Chicago are necessary to determine why the UCC statements and the TRO Action were filed when they were. As this court noted during the December 19, 2013 hearing, if L&G is interested in investigating the rationale behind the filing of the TRO Action, L&G could have posed this question directly in written discovery and obtained a non-privileged answer, (R. 93-1, L&G's Mem., Ex. 1 at 51:20-52:15),

13

and may still seek the rationale during oral discovery. L&G stated at the hearing that beyond simply finding out what Katten knew and when, L&G needs to understand what Katten "should have known based upon the surrounding facts and circumstances" regarding their work for First Chicago. (Id. at 54:13-22.) But this assertion alone is not enough to persuade this court to permit L&G to invade privilege. Also, as argued by FDIC and Katten, L&G can use non-privileged information—such as communications between Katten and IFC, Katten's redacted invoices showing their involvement with IFC, and transaction documents prepared by Katten—to investigate what Katten should have known. (Id. at 53:2-4, 64:16-24.)

The *Fischel & Kahn* court's reliance on *Jakobleff v. Cerrato, Sweeney & Cohn*, 97 A.D.2d 834 (N.Y. App. Div. 2d Dep't 1983), is particularly instructive on the issue of necessity. In *Jakobleff*, the plaintiff sued her former divorce attorneys alleging that the judgment of divorce failed to include a provision that required her husband to pay premiums for her health insurance. *Id.* at 834. The defendant law firm brought a third-party complaint against the plaintiff's subsequent attorney, Norman Essner, contending that he negligently failed to seek a resettlement of the judgment of divorce. *Id.* at 835. The law firm then sought to depose Essner to determine whether: (1) he had advised the plaintiff of possible remedial actions which could have been taken; (2) he advised her not to proceed with any such actions; or (3) the plaintiff, having been advised to proceed with remedial actions, refused to do so. *Id.* The defendant law firm's objectives in seeking privileged

information bear a strong resemblance to L&G's. L&G wants to ascertain whether Katten advised First Chicago to file the TRO Action within 90 days of filing the UCC statements, or whether Katten advised against filing the TRO Action, but First Chicago did so anyway. (R. 93, L&G's Mem. at 11.) This court agrees with the *Jakobleff* court's position that "it simply cannot be said . . . that discovery of such communications is required to enable defendants to assert a defense or to prosecute their third-party claim." *Jakobleff*, 97 A.D.2d at 835. "To conclude otherwise would render the privilege illusory in all legal malpractice actions: the former attorney could, merely by virtue of asserting a third-party claim for contribution against the present attorney, effectively invade the privilege in every case." *Id.*

L&G also attempts to draw comparisons between this case and *Pappas,* 114 Wash.2d at 206, cited and distinguished in *Fischel & Kahn,* 189 Ill. 2d at 590, in which the Washington Supreme Court found that clients had waived their privilege as to their present attorneys because those attorneys also participated in the underlying litigation giving rise to the clients' malpractice claim against former counsel. Again, the comparison breaks down because the *Pappas* court concluded that the information sought by former counsel was *vital* to his defense of the malpractice action. *Pappas*, 114 Wash.2d at 209; *see Fischel & Kahn*, 189 Ill.2d at 589. That is not the case here. L&G has not demonstrated the link between the privileged communications it seeks and its ability to pursue its claims and defenses.

15

For these reasons, this court finds that FDIC has not waived its attorney-client privilege as to communications with Katten.

**B.      Katten's Invoices**

L&G argues that if FDIC did not waive privilege over First Chicago's communications with Katten, it at least waived privilege with respect to Katten's redacted invoices, which were submitted to L&G in support of FDIC's claimed damages. (R. 93, L&G's Mem. at 1, 12-15.) Citing again to *Lama* and *Center Partners, Ltd.*, L&G contends that FDIC committed either at-issue waiver by "voluntarily inject[ing] the factual issue of Katten's invoices[,]" or subject matter waiver by "using partial disclosure of a communication as a sword[.]" (R. 93, L&G's Mem. at 14, 15.) At the December 19, 2013 hearing, this court withheld decision on whether FDIC's production of Katten's redacted invoices effectuated at-issue waiver, in part to allow L&G the opportunity to review FDIC's production. (Id., Ex. 1 at 71:17-72:14, 73:12-22.) Having now considered the points presented in L&G's current motion, this court finds L&G's arguments unpersuasive. First, for the same reasons discussed above, seeking attorneys' fees in a malpractice action is, in itself, insufficient to put damages at issue for waiver purposes. *See Fischel & Kahn,* 189 Ill. 2d at 587. "If raising the issue of damages in a legal malpractice action automatically resulted in the waiver of the attorney-client privilege with respect to subsequently retained counsel, then the privilege would be unjustifiably curtailed." *Id.* Second, L&G recognizes in its own brief that the reasoning behind subject matter waiver is that "a litigant should not be able to disclose portions of

16

*privileged* communications with his attorney to gain a tactical advantage in litigation[,]" and then claim privilege over undisclosed portions of the privileged communications relating to the same subject matter. (R. 93, L&G's Mem. at 2 (quoting *Center Partners*, 2012 IL 113107 at P39 (emphasis added)).) As FDIC correctly points out, L&G has not identified any *privileged* information disclosed in Katten's invoices which FDIC is using to gain a tactical advantage. (R. 98, FDIC's Resp. at 8.) In fact, L&G complains about the fact that privileged information has been redacted from the invoices. (R. 93, L&G's Mem. at 13.) Katten is entitled to produce redacted invoices to support a claim for attorneys' fees while also preserving attorney-client privilege and work-product protection. *See Greviskes v. Univs. Research Ass'n, Inc.*, 417 F.3d 752, 757 (7th Cir. 2005) (upholding award of attorneys' fees based on invoices and bills redacted to protect privileged information); *Reynolds v. Beneficial National Bank*, 288 F.3d 277, 286 (7th Cir. 2002) (confidential information in attorneys' fees applications "can be whited out"); *see also Balcor Real Estate Holdings v. Walentas-Phoenix Corp.*, 1995 WL 275594, at *5 (N.D. Ill. May 8, 1995) (records indicating the general subject matter of the work performed, by whom the work was performed, the time expended, and the hourly rate charged are sufficient to support an award of attorneys' fees).

A party seeking to recover attorneys' fees ultimately bears the burden of presenting sufficient evidence from which the trial court can render a decision as to their reasonableness. *Harris Trust & Sav. Bank v. American Nat'l Bank & Trust Co.*, 230 Ill. App. 3d 591, 595 (App. Ct. 1992). Because FDIC has decided to

17

preserve privilege and work-product protection over Katten's invoices by using redactions, it has also assumed the risk that the court will decline to award the full requested amount of fees on the basis of FDIC's failure to meet its burden. *See PNC Bank, NA v. OHCMC-Oswego, LLC*, 2012 WL 2062889, at *3 (N.D. Ill. June 4, 2012) (concluding plaintiff's submissions were sufficient to support requested attorneys' fees despite the use of redacted invoices); *Bretford Mfg. v. Smith Sys. Mfg. Co.*, 421 F. Supp. 2d 1117, 1129 (N.D. Ill. 2006) (awarding only 60 percent of requested fees in view of inadequate documentation and invoice descriptions). As the privilege-holder and the party seeking attorneys' fees, FDIC is entitled to make that choice.

## Conclusion

For the foregoing reasons, L&G's Motion for Reconsideration in Part of this court's December 19, 2013 order denying L&G's motion to compel is denied.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**